Filed 2/28/22  In re J.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.G. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E077482 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J272647, J272648) |
| v. | OPINION |
| L.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Steven O'Neill, Interim County Counsel, and Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

1

I.

INTRODUCTION

Defendant and appellant L.M. (mother) appeals from an order summarily denying her Welfare and Institutions Code[1] section 388 petitions for modification filed in juvenile dependency proceedings while the permanent plan selection hearing was pending as to her two children, J.G (age 6) and I.G. (age 8). She argues that the juvenile court erred when it failed to order an evidentiary hearing to determine whether to order family reunification services and increased visitation. We hold that the juvenile court did not abuse its discretion in denying mother an evidentiary hearing because she failed to make a prima facie showing of changed circumstances or that the relief she sought would be in the children's best interest. We affirm.

II.

BACKGROUND

Mother has had child welfare investigations due to substance abuse since her children were born. In September 2013, I.G. tested positive for methamphetamine at birth. Mother admitted to using drugs while pregnant, and she was referred to substance abuse counseling. In June 2015, mother tested positive for methamphetamine at J.G.'s birth. Once again, she was referred to substance abuse treatment.

Next, in a dependency case that ended in 2016, the children were detained due to mother's history of substance abuse and unstable housing. She participated in family

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

reunification services and successfully reunified with the children after participating in outpatient drug treatment, random drug testing, and aftercare treatment. The court terminated jurisdiction with family law exit orders awarding mother full physical custody of the children.

The dependency case that immediately proceeded the petitions at issue in this appeal began with a 2017 referral to San Bernardino County Children and Family Services (CFS) alleging that mother had generally neglected the children.[2] The maternal grandmother, with whom mother and the children were living, told CFS that she suspected that mother relapsed shortly after the previous dependency case closed, as mother became verbally aggressive toward the children, did not feed them, and slept all day after staying out all night with them. Mother stopped going to Narcotics Anonymous (NA) meetings. The maternal grandmother found marijuana in her home. She kicked mother out of her home due to her behavior.

CFS detained the children and filed a juvenile dependency petition. The petition alleged that the children came within section 300, subdivisions (b), (g), and (j) due to mother's substance abuse, unstable housing, and her prior history of neglect.

The juvenile court found the allegations to be true, and at the dispositional hearing, declared the children dependents of the court and ordered them removed from mother's custody. It ordered that reunification services be bypassed pursuant to section 361.5, subdivision (b)(13), and set a section 366.26 hearing for J.G. and I.G.

_____

[2] The petition was also filed on behalf of the children's older half sisters, who are not subjects of this appeal.

3

According to the March 14, 2018 section 366.26 report, the children were doing very well in the home of their paternal grandmother, with whom they had resided for about seven months as well as during the prior dependency case. Both boys were bonded with their caretaker, and the social worker recommended terminating parental rights and freeing the children for adoption.

On January 7, 2019, the juvenile court ordered the children placed with the paternal grandmother as their legal guardian and terminated the dependency case. Mother's visits were reduced to monthly and supervised.

Two years later, on January 27, 2021, the paternal grandmother, as the children's legal guardian, filed section 388 petitions with the juvenile court requesting that a section 366.26 hearing be set to consider terminating parental rights. She alleged that the children had lived with her for approximately four years, that neither parent had made any effort to reunify, and that adoption was in the children's best interest as it would provide them with stability, structure, and safety.

CFS recommended that the court grant the petitions. The social worker reported that she had observed both children call their legal guardian "mom," and they appeared very bonded to her. According to the legal guardian, mother continued to struggle with drug addiction and incarceration.[3] Additionally, her visits were infrequent.

The legal guardian reported that because mother's boyfriend's son had struck J.G. during a visit, she allowed mother to have FaceTime visits only. Also, in January 2021,

_____

[3] This is the only reference in the record to mother having been incarcerated.

4

she told the maternal grandmother that the visits would be changed to video visits due to her concerns about COVID-19.[4]

On February 26, 2021, the juvenile court granted the legal guardian's section 388 petitions and set a selection and implementation hearing for the children.

Several months later, on June 7, 2021, mother filed a section 388 petition on behalf of each child. She asked the court to terminate the legal guardianship and grant her family reunification services, including increased visitation, not to be supervised by the legal guardian. She claimed that the paternal grandmother had interfered with her visits. She declared that she had completed a drug court program, as well as parenting and anger management classes, and that she continued to attend AA/NA meetings.[5] She further averred that she met with a sponsor regularly and had obtained stable employment, transportation, and housing. She argued her request was in the children's best interest because she had demonstrated her ability to maintain stability and sobriety for a "significant period of time" and continued to maintain contact with the children when permitted. Mother declared that the children would benefit from being raised by her, asserting that she had demonstrated long-term stability.

Mother attached a statement to her section 388 petitions further elaborating on the information set forth in the petitions. She also attached some documentation, including a

_____

[4] Due to conflict with mother, the legal guardian communicated with the maternal grandmother about visits.

[5] "AA" refers to Alcoholics Anonymous.

5

February 19, 2021 minute order from the drug court reflecting that on that date she was successfully terminated from the program and formal probation; a letter from her sponsor dated December 17, 2020, confirming she had been mother's sponsor for two months; a certificate of competition for an anger management/parenting class dated May 10, 2021; and a letter from a residential treatment program dated January 19, 2021, confirming that mother had participated in the program from December 21, 2020, to January 19, 2021.

The juvenile court summarily denied mother's section 388 petitions because they did not promote the best interest of the children.

## III.

## DISCUSSION

Mother's sole contention on appeal is that the juvenile court erred in summarily denying her section 388 petitions to order reunification services and increased visitation. She contends she made prima facie showings entitling her to a hearing. We disagree.

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child. [Citation.] The parent bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. [Citation.] Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought. [Citation.]" (*In A.A.* (2012) 203 Cal.App.4th 597, 611-612.)

6

Whether a petitioner makes a prima facie showing entitling her to a hearing " 'depends on the facts alleged in [the] petition, as well as the facts established as without dispute' " by the court's records. (*In re B.C.* (2011) 192 Cal.App.4th 129, 141.) "In considering whether the petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case. [Citation.]" (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616.)

We do not disturb a juvenile court's summary denial of a section 388 petition absent an abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) Abuse of discretion is found where the juvenile court " ' "exceeded the bounds of reason" ' " and the determination was " ' "arbitrary, capricious, or patently absurd." ' " (*Ibid.*) When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the juvenile court. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.)

The juvenile court did not abuse its discretion when it denied mother's section 388 petitions without a hearing. Even if mother established at a hearing the progress she alleged in her petitions, that would not sustain an order to provide reunification services or increased visitation. Her efforts reflected that her circumstances were changing but had not yet changed.[6] Moreover, her petitions failed to make a prima facie showing that

---

[6] While the juvenile court summarily denied mother's section 388 petitions on her failure to make a prima facie showing that her request was in the children's best interests, we conclude that the judgment could be affirmed either for that reason or because mother did not make a prima facie showing of changed circumstances. (See, e.g., *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 269 ["we will affirm a judgment correct on any legal basis, even if that basis was not invoked by the trial court. [Citation.]"].)

the reunification or visitation changes she sought would advance the children's best interest, including their need for a stable and permanent living situation.

It is difficult to show changed circumstances when one of the conditions leading to dependency is the parent's long-term substance abuse, a problem not easily resolved or ameliorated. (See e.g. *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 225 [well-settled that a parent with a long-standing substance abuse severe enough to cause an inability to adequately care for a child cannot show changed circumstances by showing recent sobriety and participation in a treatment program].) Indeed, there must be a "substantial" change of circumstances to support a section 388 petition. (*Id.* at p. 223; see also *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [parents' most recent efforts at sobriety "were only three months old" and did not demonstrate changed circumstances].)

Here, the court terminated mother's most recent dependency case in 2019, based in part on an allegation that she had a history of substance abuse that interfered with her ability to provide adequate and appropriate care for the children. The abuse was a long-standing problem: mother had child welfare investigations due to substance abuse since each child was born. In her earlier dependency case that terminated in 2016, she overcame allegations of substance abuse (and unstable housing) after her children were removed from her custody. She participated in family reunification services, outpatient drug treatment, random drug testing, and aftercare treatment. Unfortunately, after that dependency case terminated successfully in November 2016, it did not take long for mother to relapse. In approximately February or March of 2017, according to the maternal grandmother, mother started to display behavior of being "loaded" and started

8

neglecting the children and verbally abusing them. Mother also stopped attending her NA meetings. This led to the most recent dependency case, in which her children were detained again as another unfortunate effect of a long-term substance abuse problem.

When faced with the prospect of losing her children in the latest dependency case, mother nevertheless relapsed. She tested positive for amphetamines when ordered to test, and failed to appear for her next court-ordered drug test, resulting in a presumed positive result. Then, even after the social worker recommended that the juvenile court bypass reunification services for mother, she tested positive for marijuana. She yet again tested positive the next day when she enrolled in a substance abuse treatment program. Mother stopped attending this program after one week and never returned. Even after her children were removed from her custody and a legal guardianship established, she was ordered to participate in drug court, apparently as part of her formal probation, indicating a continued struggle with substance abuse as the legal guardian claimed.[7]

Particularly in light of her long substance abuse history, mother's allegations about her sobriety did not demonstrate a material or substantial change of circumstances. Her inpatient drug treatment program was only a month-long program that ended in January 2021, around the time that the legal guardian filed her section 388 petition. She submitted to random drug testing at that program but did not provide evidence of drug tests during the several months between that and her June 2021 section 388 petitions, nor

---

[7] It appears mother was originally placed on probation after she was charged with felonies, but our record does not show when that was nor what caused her to be referred to drug court as a condition of probation.

9

did she document participation in any program during that time. Her drug court probation terminated in February 2021, and she alleged (but without documentation) that she had attended AA/NA meetings regularly. She alleged that she had learned what triggered her abuse and had formulated a relapse prevention plan, without explaining the plan. Though she asserted that she spoke to her sponsor every day, she provided an outdated letter from her sponsor dated almost seven months before she filed her section 388 petitions.

Mother did not even allege how long she had been sober at the time she filed her petitions, nor that she had remained sober since completing the residential treatment program. Without this information, we cannot assume mother's sobriety during the months in 2021 before she filed her section 388 petitions. (See e.g. *In re Anthony W.* (2001) 87 Cal.App.4th 246, 251 [finding "conclusory" allegations of participation in and completion of drug counseling, testing, and parenting classes that were made without dates, names of counselors, certificates, or drug test results.].)

Even if we were to infer that mother remained sober after completing her treatment program in January 2021, this period of approximately seven months was insufficient to show changed circumstances where mother had a long substance abuse history. (*In re Cliffton B.* (2000) 81 Cal.App.4th 415, 421-423 [seven months of sobriety insufficient].) While it is commendable that mother made progress, that progress signals only that her circumstances were changing, not changed. The juvenile court did not abuse its discretion in summarily denying the petition.

10

Even if there were changed circumstances, the juvenile court reasonably found that mother failed to make a prima facie showing that the proposed order was in the best interest of the children. "When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. [Citation.] That need often will dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child. [Citation.]" (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464, citing *In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) This is a difficult burden to meet in many cases, especially when reunification services have been terminated or bypassed, as in this case.

By the time of a section 366.26 hearing to select and implement a child's permanent plan, the interests of the parent and the child have diverged. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 254.) Therefore, after reunification efforts have been terminated or bypassed, the court's focus shifts from family reunification toward promoting the child's needs for permanency and stability. (*In re N.F.* (2021) 68 Cal.App.5th 112, 121.) In fact, there is a rebuttable presumption that continued foster care is in the best interests of the child, and this presumption applies with even greater force when the permanent plan is adoption. (*In re Angel B.*, *supra*, 97 Cal.App.4th at p. 464.) A court entertaining a section 388 petition at this stage of the proceedings must recognize this shift of focus in determining the best interests of the child. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.)

In her section 388 petitions, mother stated that she believed her request for services and increased visitation was in the children's best interest because she had

11

demonstrated her ability to maintain stability and sobriety for a "significant period of time" and continued to maintain contact with the children when permitted to do so. Mother did not explain how reunification services and increased visitation would be in the children's best interests. J.G. and I.G. had been in the care of their legal guardian for over four years when mother filed her section 388 petitions and were bonded to their guardian. The children referred to their guardian as "mom" and thrived in her stable home. Their guardian had provided a nurturing environment and remained committed to adopting them. In contrast, it was uncertain whether mother's efforts at sobriety would be long-lasting.

Additionally, mother did not claim in her section 388 petitions that the children had a bond with her, or even a positive relationship. To the contrary, the record indicates that J.G. and I.G. were not bonded to mother. According to the legal guardian, she believed that J.G. did well during the visits, but that this was because he did not know mother. She reported that I.G. would refuse to attend visits with mother unless he was assured that he would be coming back to the guardian's home after the visit. I.G. would also have tantrums and was defiant for about three days after visits with mother. Along the same lines, the maternal grandmother agreed that the children seemed "unfazed by what [was] going on" during the visits with their mother. She agreed that J.G. did not know his mother and said that I.G. would agree to attend her visits only when promised that his older sisters would attend. The maternal grandmother also reported that I.G. required promises that he would be returning to his paternal grandmother's home before agreeing to attend.

12

Mother's visitation with the children was also inconsistent. When the legal guardian filed her section 388 petitions in January 2021, she reported that mother's visits over the years had been infrequent. Around that time, the legal guardian informed the maternal grandmother that visitation from that point on would be virtual, due to concerns regarding COVID-19 and because mother's boyfriend's son struck J.G. during a visit. Thereafter, however, mother and the maternal grandmother did not contact the legal guardian to arrange a visit until June 2021. Even when mother had her first virtual visit on June 3, 2021, she terminated the visit after only five minutes. Mother concedes that she did not visit the children regularly and that this "does not weigh in her favor." Mother's efforts at facilitating and maintaining a bond did not justify granting her section 388 petitions.

Mother points out that in her section 388 petitions she alleged the legal guardian had interfered with visitation. She contends that if the guardian had not interfered with visitation, she would have had "a better relationship with the children and that going forward into the future maternal contact would benefit the children." We do not see support for this contention.

As a factual matter, mother's assertion of interference with visitation lacks specificity. Mother did not dispute the legal guardian's claim that mother and the maternal grandmother did not seek to set up virtual visitation between January and June of 2021, nor did she dispute the legal guardian's statement that mother had visited infrequently over the years. Thus, even if there had been some period of interference on the paternal grandmother's part, it comes along with both the recent period of several

13

months in which mother made no effort to have a relationship with her children, and mother's overall history of infrequent contact.

Finally, even assuming there was some interference with visitation, mother speculates in a way not grounded in the record when she claims that absent that interference, she would have had a "better relationship with the children and that going forward into the future maternal contact would benefit the children." J.G. does not know his mother, and the children are not bonded with their mother, as she concedes in her reply brief. I.G. had tantrums and defiant behavior for three days following the visits. Family members reported that he was so worried about being uprooted from his home, that his legal guardian had to assure him that he would return to her home after the visits with mother.

Under the circumstances of this case, the juvenile court did not abuse its discretion in denying the mother's request for an evidentiary hearing on her petitions.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL          

J.

We concur:

RAMIREZ         

P. J.

CODRINGTON       

J.

14